UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUDREY SHORT individually and FAYE SHORT, individually and as Trustee for the Faye S. Albert Retirement Plan <br>     PLAINTIFFS, <br><br> v. <br><br> CONNECTICUT COMMUNITY BANK, N.A. <br>     DEFENDANT. | : <br> : <br> :                         : <br> : <br> : CIVIL ACTION NO. 3:09cv1955(VLB) <br> : <br> : MARCH 26, 2013 <br> : <br> : <br> : |

### ORDER DENYING DEFENDANT'S [DKT. #144] MOTION FOR LEAVE TO FILE ADDITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendant seeks to file a supplemental motion for summary judgment on the Plaintiffs' breach of fiduciary duty claims on the basis of a recent Connecticut Appellate court decision. *See Iacurci v. Sax*, 139 Conn. App. 386 (2012). "Whether to permit a party to make such a motion generally rests within a court's discretion." *Ramos v. SimplexGrinnell LP*, No. 7-cv-981(SMG), 2011 WL 4710814, at *2 (E.D.N.Y. Oct. 4, 2011) (citing 11 Moore's Federal Practice § 56.121 1 [b]). "[C]ourts typically judge whether to grant leave to file a supplemental motion based on criteria similar to those governing motions for reconsideration. Those include whether there has been a change in the law, or whether new evidence has come to light that was not previously available In making this decision, we consider the strong interests of judicial efficiency, finality, and scarce judicial resources discussed by the courts in setting the standards for motions for reconsideration, as well as any prejudice to the plaintiff in having to respond to an additional motion and having his case further delayed." *Jackson v. Goord*, 664

F.Supp.2d 307, 314 (S.D.N.Y. 2009).  Although the Bank contends that the *Iacurci* decision represents a change in law which would impact the Court's prior holding on the motions for summary judgment that there exists triable issues as to whether the Bank had a fiduciary duty, this Court finds that *Iacurci* did not alter the well-established analytical framework for examining fiduciary duty claims in Connecticut on which the Court relied in denying summary judgment.  For the reasons stated hereafter, the Court finds that the facts of *Iacurci* are distinguishable from the present case and therefore the *Iacurci* court's conclusion is not guiding or dispositive in the present case.   As *Iacurci* does not represent a change in the law compelling a different conclusion, the Court denies the Defendant leave to file an additional summary judgment motion.

The Bank argues the recent decision in *Iacurci v. Sax,* 139 Conn. App. 386 (2012) makes clear that the Plaintiffs' proffered evidence is insufficient as a matter of law to establish that the Bank owed the Plaintiffs any fiduciary duties at all.  The Bank suggests that the *Iacurci* decision should disrupt this Court's prior holding that there were triable issues as to the alleged breach of fiduciary duty claims.  The *Iacurci* decision did not change the law of fiduciary duty in Connecticut.   Instead, the *Iacurci* court merely applied the well-established legal framework for examining fiduciary relationships, which this Court utilized to a distinguishable fact scenario.  The *Iacurci* court held that an accountant and accounting firm hired to prepare tax returns did not owe the client a fiduciary duty.  The court emphasized that the "law does not provide a bright line test for determining whether a fiduciary relationship exists, yet courts look to well

established principles that are the hallmark of such relationships" and the "court has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations…" *Id.* at 401 (internal quotation marks and citations omitted).  In coming to its conclusion, the *Iacurci* court emphasized that the plaintiff's allegations centered on the professional negligence of the accountant and accounting firm in their duty to prepare tax returns for the plaintiff and noted that professional negligence alone does not give rise automatically to a claim for breach of fiduciary duty. *Id.* at 401-02.  The court further explained that "[p]rofessional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." Id. at 402. (internal quotation marks and citations omitted).

In examining the particular relationship between the accounting firm and the plaintiff, the *Iacurci* court took notice of their engagement agreement, which provided only for the performance of a basic accounting function.  The engagement letter expressly provided that the accounting firm would prepare the plaintiff's tax return from information which the plaintiff was required to furnish and would not audit or otherwise verify the data the plaintiff submitted. *Id.* at 403.  The engagement letter emphasized that the plaintiff bore the burden of providing the required information for the preparation of the tax return and also had final responsibility for the income tax return. *Id.*  The *Iacurci* court found that the evidence presented revealed that the accounting firm performed the duties outlined in the engagement letter by preparing the plaintiff's tax returns "on information provided by the plaintiffs and were filed with the plaintiff's final

approval." Further there was "no allegation, let alone evidence, that the defendants were hired to, or were expected to, undertake tasks such as managing the plaintiff's funds, advising the plaintiff's personal or business affairs, but to prepare tax returns and provide advice concerning tax liability." *Id.* at 405. Consequently, the *Iacurci* court held there was "no evidence that the relationship between the parties was characterized by anything more than the usual interactions between an accountant hired to prepare annual tax returns and his or her client" and therefore there was no evidence that the relationship was characterized by a unique degree of trust or confidence. *Id.* at 405-06. Lastly, the court noted there was no evidence that the relationship afforded the defendants an opportunity to represent the plaintiff's interests to third parties or to abuse trust and confidence reposed in them by the plaintiff." *Id.*

Contrary to the Bank's contention, the nature of the relationship between the Bank and the Plaintiffs differs from the relationship the Connecticut Appellate court examined in *Iacurci*. In *Iacurci*, the accounting firm performed a basic accounting function in preparing plaintiff's tax return subject to the plaintiff's final approval based on information the plaintiff was required to provide which the accounting firm was expressly not required to audit or verify under the engagement agreement. In the present case, the Plaintiffs did not furnish any financial information to the Bank and had no ability to approve the financial statements which the Bank calculated based on information that BLMIS furnished. Moreover, this Court has held there are triable issues of fact as to the nature and scope of the Bank's contractual duty to conduct audits and whether

that duty required it to assure the accuracy of the Plaintiff's account statements, on which it calculated its fees, by auditing its own operations or whether it also required it to assure the accuracy of the BLMIS account statements by auditing BLMIS. Further, the facts of the present case indicated that the Bank was not merely providing a basic accounting or record keeping function with respect to the calculation of fees and investment discretion. As discussed in this Court's decision on summary judgment in the related case *Levinson et al v. PSCC Svc Inc.*, which more fully fleshed out the fiduciary duty claims made in the present case as well as the Court's analysis of those claims, the Bank without consulting the Plaintiffs, made the determination to liquidate investments in the BLMIS account, thus altering the allocation of Plaintiffs' proportionate investments between the clearing account and the omnibus account. See *Levinson et al v. PSCC Svc Inc. et al*, 3:09-cv-269(VLB), 2012 WL 4490432, at *18 (D. Conn. Sept. 28, 2012). In addition, WNB determined when to transfer money to BLMIS, without instructions from the Plaintiffs or BLMIS, in order to satisfy anticipated future cash needs. *Id.* Notably, when the OCC discovered these practices, it concluded that "[WNB's role] could be construed as evolving beyond being ministerial in nature." *Id.* Viewed in the light most favorable to the Plaintiffs, this evidence demonstrates that the Bank's exercise of discretion over Plaintiff's funds which were not invested with BLMIS, may have exceeded the bounds of mere ministerial tasks like the preparation of tax returns based on information provided by the client for its review as was the case in *Iacurci*. Further considering that the Plaintiffs had no ability to interact directly with BLMIS regarding their

investments, the Bank did represent the Plaintiffs' interests to third parties, further distinguishing the facts in this case from those of and noted in *Iacurci*. As the facts of *Iacurci* are clearly distinguishable, it does not disturb the Court's prior holding on fiduciary duty.

    Further, it has been two years since the parties filed cross motions for summary judgment and almost a year since this Court issued its ruling. The time for filing dispositive motions has long passed and it is the eve of trial. To permit additional dispositive motions on the eve of trial would frustrate judicial efficiency and the goals of finality as well as prejudice the opposing party and indubitably delay the resolution of the case. For these reasons also, the Court denies the Defendant leave to file an additional summary judgment motion.

                                IT IS SO ORDERED.

                                _____/s/_____

                                Hon. Vanessa L. Bryant
                                United States District Judge

Dated at Hartford, Connecticut: March 26, 2013